IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHAIN ELECTRIC COMPANY                                    PLAINTIFF

V.                                CIVIL ACTION NO. 2:15-CV-24-KS-MTP

JOHN D. JOUBERT, *et al.*                                 DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This is a breach of contract and tort case arising from an alleged conspiracy to breach employee confidentiality agreements and tortiously interfere with business relationships. Defendants Mick Dubea and LineTec Services, LLC filed a Motion to dismiss [58] for lack of personal jurisdiction. For the reasons provided below, the Court **denies** the motion.

"A federal court siting in diversity may exercise personal jurisdiction only to the extent permitted [in] a state court under state law." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citations omitted). "The court may only exercise jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution." *Id.* "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident . . . . A plaintiff satisfies this burden by presenting a *prima facie* case for personal jurisdiction." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012) (citations omitted). "The district court is not obligated to consult only the assertions in the plaintiff's complaint . . . . Rather, the district cout

may consider the contents of the record at the time of the motion, including affidavits . . . ." *Paz*, 445 F.3d at 812 (citations omitted). But "uncontroverted allegations in the plaintiff's complaint must be accepted as true, and all disputed facts must be construed in the plaintiff's favor." *Blacklidge Emulsions, Inc. v. Blankenship*, No. 1:13-CV-293, 2013 U.S. Dist. LEXIS 173082, 2013 WL 6492876, at *1 (S.D. Miss. Dec. 10, 2013) (citations omitted).

## A.    *Long-Arm Statute*

"Mississippi's long-arm statute provides the courts shall have jurisdiction over a nonresident who: (1) makes a contract with a resident of this state to be performed in whole or in part by any party in this state, (2) commits a tort in whole or in part in this state against a resident or nonresident, or (3) does any business or performs any character of work or service in this state." *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 720 (S.D. Miss. 2014). Plaintiff argues that the Court may exercise personal jurisdiction over Defendants pursuant to the tort prong of the long-arm statute. "Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997).

Among other things, Plaintiff alleges that Defendants tortiously interfered with its business relationships. The elements of a tortious interference claim are: "(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of

the defendant (which constitutes malice); and (4) that actual damage and loss resulted." *Coleman & Coleman Enters. v. Waller Funeral Home*, 106 So. 3d 309, 315-16 (Miss. 2012). Generally, tortious interference "occurs when a person unlawfully diverts prospective customers away from one's business." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998).

This Court has previously addressed the long-arm statute's application to a tortious interference claim. Several district judges in this state have held that when the plaintiff's principal place of business or residence is in Mississippi the alleged injury – an element of the tort – necessarily occurred here. *See Antler Insanity*, 58 F. Supp. 3d at 720-21; *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 579 (S.D. Miss. 2012); *Howard Indus. v. Ridgeway*, No. 2:15-CV-38-KS-MTP, 2015 U.S. Dist. LEXIS 84105, at *5 (S.D. Miss. June 29, 2015); *Blacklidge Emulsions, Inc. v. Blankenship*, No. 1:13-CV-293-LG-JMR, 2013 U.S. Dist. LEXIS 173082, at *6 (S.D. Miss. Dec. 10, 2013); *Werner v. Landstar, LLC*, 2006 U.S. Dist. LEXIS 24163, at *7 (N.D. Miss. Apr. 18, 2006).

Plaintiff alleged that it is a Mississippi corporation with its principal place of business in Hattiesburg, Mississippi. It further alleged that Defendants' actions caused it to suffer damages, including lost revenues, lost profits, diminution of asset value, and loss of customer goodwill. Plaintiff also pleaded specific facts related to bids lost to LineTec on the Fairfield Estates Subdivision and the Jefferson Davis Electric Cooperative. Accordingly, the Court finds that Plaintiff has alleged sufficient facts to demonstrate that it suffered an injury in Mississippi, and that an element of the tort

occurred in Mississippi.

**B.    *Due Process Clause***

The Fourteenth Amendment's Due Process Clause "permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Unified Brands*, 868 F. Supp. 2d at 577. "Minimum contacts . . . can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Id.*

Plaintiff argues that Defendants have sufficient contacts with Mississippi to confer specific jurisdiction. "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). The Court "applies a three-step analysis to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Jackson v. Tanfoglio Guiseppe S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010).

    *1.    Minimum Contacts*

The Court's inquiry "focuses on the relationship among the defendant, the

forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State." *Id.* at 1122. Phrased differently, the Court must determine whether the non-resident defendant directed specific acts toward the forum state. *McFadin*, 587 F.3d at 762; *Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013). Here, all of the specific conduct by Dubea and LineTec occurred outside the state of Mississippi. However, "even an act done outside the [forum] state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *McFadin*, 587 F.3d at 761.[1] The alleged intentional tort must "be assessed as part of the analysis of the defendant's relative contacts with the forum." *Stroman Realty*, 513 F.3d at 486. "Merely causing harm to a resident of a state is not sufficient." *Bustos*, 538 F. App'x at 568. Likewise, "foreseeable injury in the state is not enough absent the direction of specific acts toward the forum." *Id.*

Dubea admitted during a hearing in another case [69-2] that a "lot of Chain employees" once worked for him at another company, that he "got a lot of calls from those past employees that wanted to join LineTec," and that was the "sources of the employees that [he] hire[d]." Dubea also admitted that he wants to hire other current

---

[1]*See also Calder v. Jones*, 465 U.S. 783, 788-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008); *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 629 (5th Cir. 1999); *Bustos*, 538 F. App'x at 568; *Blacklidge Emulsions*, 2013 U.S. Dist. LEXIS 173082 at *7-*8.

employees of Plaintiff, and that some have expressed interest in coming to work for him. At the same hearing, Snyder admitted that he left Chain to work LineTech because he "ha[d] some discussions with Mr. Dubea about he was wanting to form this company . . . ," and "whenever [he] was offered that, naturally it was a . . . better choice for myself and my family to take that in hopes that . . . I would be more successful . . . ."

Plaintiff recovered e-mail correspondence [69-5] between Snyder and Dubea. The first message was sent by Snyder on February 2, 2015 – approximately one month before he left Plaintiff to work for LineTec, and two weeks before Plaintiff had a bid due on a large contract. Snyder told Dubea: "Here are the tool listings and equipment on URD and OH crews. If you need any help with decisions on equipment or help with pricing it out please inform and I will be glad to assist you. Thanks again for the opportunities . . . ." Two files were attached to the message; they were titled "OH Distribution Tool List.pdf" and "URD Tool List.pdf." A week later Dubea responded with a list of questions regarding a quote, seeking Snyder's assistance. Snyder performed similar work for Plaintiff, coordinating bids for new projects.

On February 10, 2015, Snyder sent Dubea an e-mail with the subject heading "Progress." Snyder wrote: "Just wondering how things are going? Everything is well here, including employees and customers. Very gracefully I have spoken to the key players and everyone is aboard. Looking forward to talking to you soon."

On February 18, 2015 – approximately two weeks before Snyder and Joubert left Plaintiff – Dubea e-mailed them some potential logos for LineTec Services to ask their

6

opinion. He said, "We can change the colors in the Logo's [sic] to whatever we like. Let me know your Logo preference and Color preference." On February 19 and 25, 2015, Dubea sent Snyder and Joubert e-mails concerning bid packages due for two different potential LineTec customers.

Deleted text messages [69-4] recovered from Snyder's company phone demonstrate that he spoke with Dubea for approximately fifty minutes on February 15, 2015,  the night before a major bid was due, while at Joubert's home, only two weeks before he quit working for Plaintiff and went to work for LineTec. Among other things, Snyder texted: "We are gonna call Mick and try to answer his questions real quick."

Finally, Plaintiff alleged that Snyder and Joubert worked on the "Fairfield Project" bid prior to resigning, while simultaneously communicating with and assisting Dubea with LineTec's own bid for the Fairfield Project. One of Dubea's e-mails [69-5] to Snyder and Joubert concerned the Fairfield Project. The Fairfield bids were due on March 5, 2015 – three days after Joubert and Snyder left Plaintiff for LineTec. Plaintiff alleges that it lost the bid to LineTec, and that this was the first time LineTec had ever bid on a project in competition with it.

In summary, the record contains a wide variety of evidence [69-1, 69-2, 69-4, 69-5] indicating that Dubea – and, by extension, LineTec – conspired with Snyder and Joubert to tortiously interfere with Plaintiff's business. Dubea admitted in a hearing before another court [69-2] that many of his employees came from Plaintiff, and that he wanted to hire more of Plaintiff's employees. Snyder admitted that he quit working

for Plaintiff because he had been talking with Dubea, who made him a better offer. E-mail [69-5] and text message [69-4] correspondence demonstrates that Dubea had been conspiring with Snyder and Joubert for at least a month before they "changed shirts."[2]

Therefore, Plaintiff has provided evidence that Defendants Dubea and LineTec "intentionally aimed their . . . harmful conduct" at Plaintiff, a Mississippi corporation. *Bustos*, 538 F. App'x at 568. Plaintiff also alleged that the effects of Defendants' conduct accrued in Mississippi, in the form of lost bids, revenue, and profits. This is not a case where it was merely foreseeable that Plaintiff would be harmed, or where it was merely fortuitous that Plaintiff resides in Mississippi. Plaintiff alleges and has provided evidence that Defendants *intended* to harm it in Mississippi through out-of-state acts. In the Court's opinion, these facts are sufficient to place this case within the relatively narrow category of cases where "an act done outside the [forum] state . . . has consequences or effects within the state" as intended by the alleged tortfeasor and, therefore, "will suffice as a basis for jurisdiction in a suit arising from those consequences . . . ." *McFadin*, 587 F.3d at 761. Defendants "are not charged with mere untargeted negligence," but, rather, "their alleged intentional . . . tortious actions were knowingly initiated and aimed at" a Mississippi resident. *Guidry*, 188 F.3d at 630. "Under the circumstances, [Defendants] must reasonably anticipate being haled into court" in Mississippi. *Id.* Accordingly, Dubea and LineTech have minimum contacts

---

[2]According to Defendants, it is a routine practice in their industry for subcontractors and employees to "change shirts" and switch employers without prior notice.

with Mississippi.

    2.    *Arises from the Contacts*

Plaintiff asserted claims of tortious interference and civil conspiracy against Defendants, and the specific acts it alleged Defendants committed in furtherance of the conspiracy are Defendants' forum-related contacts. Therefore, Plaintiff's "cause of action arises out of or results from" Defendants' "forum related contacts." *Jackson*, 615 F.3d at 585.

    3.    *Fair and Reasonable*

"The specific jurisdiction inquiry next asks whether jurisdiction would comport with fair play and substantial justice," *Taishan-Gypsum Co. v. Gross,* 753 F.3d 521, 544 (5th Cir. 2014), or "whether the exercise of personal jurisdiction is fair and reasonable." *Jackson*, 615 F.3d at 585. "[T]he burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The Court considers five factors: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Taishan-Gypsum*, at 544.

First, Defendants argue that they "face significant burdens in defending this lawsuit in Mississippi as a result of travel expenses and inconvenience, the continued retention of Mississippi counsel, and the movement of evidence and witnesses from Texas and Louisiana to Mississippi."

This Court frequently hears cases involving out-of-state litigants, and the burdens on them are minimal. Dubea resides in Beaumont, Texas, which is approximately a five and a half hour drive from Hattiesburg, Mississippi – a drive that Dubea himself made to attend the Court's hearing on August 28, 2015, even though he was not a party to the litigation at that time. Litigants frequently travel from much farther distances to litigate in this Court. Technology has greatly reduced the cost of litigating from a distance, and Defendant would only be required to travel to Hattiesburg for a pretrial conference and trial. The Court finds that the burden on Defendants would be minimal.

Next, Defendants argue that judicial efficiency would best be served if they defended the case in Louisiana because that is where the Defendants and most of the evidence and witnesses are located. Undoubtedly, some witnesses and evidence are located in Louisiana. However, some are also located right here in Hattiesburg, Mississippi. As the Court noted at the hearing last fall, someone will have to travel in this litigation. All Defendants have offered the Court is their bare assertion that it would be more efficient to hear it in Louisiana. That is insufficient to carry their burden of demonstrating unreasonableness.

Finally, Defendants argue that any fundamental social policies at issue would be best addressed by resolving this dispute in Louisiana because that is where all of the disputed conduct occurred. This factor cuts both ways insofar as both Mississippi and Louisiana have a strong interest in vindicating their respective social policies. In fact, the second factor in the Court's analysis is the forum state's interest, which

10

weighs in favor of Mississippi.

On the whole, Defendants failed to carry their burden of demonstrating that the exercise of jurisdiction would be unfair or unreasonable. The burden on Defendants is minimal, and they have provided the Court with no basis to conclude that litigating elsewhere would be more efficient. Both Louisiana and Mississippi have a strong interest in furthering their respective social policies. At best, these factors are neutral.

### C.    *Conclusion*

For the reasons provided above, the Court **denies** the Motion to Dismiss [58] filed by Defendants Mick Dubea and LineTec Services, LLC.

SO ORDERED AND ADJUDGED this 14th day of March, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE
